# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-01276-COA

**CHRISTOPHER J.K. MORGAN A/K/A**                    **APPELLANT**
**CHRISTOPHER J. MORGAN A/K/A**
**CHRISTOPHER JOSEPH KIRK MORGAN**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:               10/14/2024
TRIAL JUDGE:                           HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:   JEFFERSON DAVIS COUNTY CIRCUIT
                                              COURT
ATTORNEY FOR APPELLANT:      CHRISTOPHER J.K. MORGAN (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                                              BY: KATY TAYLOR SARVER
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                          AFFIRMED - 08/26/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     In 2016, a grand jury in the Circuit Court of Jefferson Davis County indicted Christopher Morgan on three counts of child exploitation.[1] Counts I and II alleged that Morgan "unlawfully, feloniously, and knowingly possess[ed] or knowingly access[ed] with intent to view a photograph, drawing, sketch, film, videotape or other visual depiction of an actual child engaging in sexually explicit conduct" in violation of Mississippi Code Annotated section 97-5-33(5) (Rev. 2014). Count III alleged that Morgan "did knowingly

---

[1]    The conduct described in each count was based on "two or more acts and transactions connected together and constituting parts of a common scheme and plan."

send, transport, transmit, ship, mail or receive photographs, drawings, sketches, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct" in violation of Mississippi Code Annotated section 97-5-33(3).

¶2. In February 2018, Morgan filed a petition to enter a plea of guilty to all three counts, which was followed by a plea hearing on March 2. At the plea hearing, the circuit court began by making sure that Morgan had read and understood the contents of his plea petition and the charges against him. The circuit court also advised Morgan that by pleading guilty, the court would sentence him just as if he had gone to trial and been found guilty by a jury. Further, the circuit court made it clear that while it would consider any sentencing recommendations made by the district attorney or defense counsel, the court "[did not] bind [itself] to follow" those recommendations.

¶3. The circuit court also took steps to ensure that Morgan was satisfied with his counsel. The circuit court asked Morgan if he was "satisfied with" what his counsel had done, and Morgan agreed that he was. The court also confirmed that Morgan's counsel had discussed with him the minimum and maximum penalties for his crimes. Additionally, the circuit court verified that Morgan knew he was entering a blind plea. The circuit court then asked Morgan to explain what a blind plea was, and Morgan replied, "[B]asically, throwing yourself on the mercy of the court . . . and leaving it to [the court] to render righteous judgment." The circuit court asked Morgan how he pled to the three counts of child exploitation, and Morgan said, "Guilty, your honor."

2

¶4.     The court accepted Morgan's guilty plea as knowing, intelligent, and voluntary. Due to the severity of the charges, the circuit court delayed sentencing to give both the State and Morgan time to prepare a pre-sentence report. The circuit court announced that it would accept letters from Morgan that addressed possible mitigating factors and letters from the State that discussed possible aggravating factors.

¶5.     On March 9, 2018, the circuit court conducted a sentencing hearing in open court following a review of the pre-sentence investigation report. At the hearing, the court heard from witnesses and listened to arguments from the State and the defense related to sentencing. During this hearing, the State, the defense, and the court each made it abundantly clear that the court retained ultimate discretion over sentencing and that no agreement had been reached between the State and Morgan.

¶6.     For example, the State noted that the "ultimate sentence in th[e] matter [was] within the court's discretion," and the State was "leaving to the court's discretion" whether Morgan's charges in Jefferson Davis County would run consecutively to or concurrently with his charge in Forrest County. Similarly, when the defense incorrectly claimed that Morgan had entered a "plea bargain" with the State, the court properly responded that "it was not a plea bargain;" rather, the court had "absolutely accepted a blind plea," and because of this blind plea, "the final decision as to what the defendant gets is up to the court." Lastly, when addressing the court directly, Morgan's attorney acknowledged that "everyone in this court is well aware that you will make your decision regardless of any recommendation made" by

3

the State or the defense.

¶7.    At the conclusion of the sentencing hearing, Morgan was sentenced for Counts I, II, and III to three concurrent forty-year terms in the custody of the Mississippi Department of Corrections (MDOC), with twenty-five years to serve, fifteen years suspended, and fifteen years of post-release supervision for each conviction. The circuit court then explained that these sentences would run consecutively to an unrelated fifteen-year sentence in Forrest County. The court asked Morgan if he understood that he was "[e]ffectively" going to serve forty years, and Morgan said he did. Morgan was also required to pay a fine of $150,000, an assessment of $7,500 to the Public Defender's Fund, register as a sex offender, and pay court costs.

¶8.    Three years after the sentencing hearing,[2] Morgan filed a motion for post-conviction collateral relief (PCR) in the Circuit Court of Jefferson Davis County. In his motion, Morgan claimed (1) his plea was involuntary, (2) he received an illegal sentence, (3) he received ineffective assistance of counsel, and (4) his sentence was disproportionate. Essentially, Morgan argued that because his sentences for each county were statutorily prohibited from running concurrently under Mississippi Code Annotated section 99-19-21(2) (Rev. 2020),[3]

_____

[2] Morgan pleaded guilty on March 9, 2018, and timely filed his PCR motion on March 9, 2021. *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2020). The circuit court erroneously dismissed Morgan's PCR motion in September 2022 for want of prosecution. Morgan filed a petition for mandamus with the Supreme Court, seeking a response from the circuit court. *See Morgan v. State*, No. 2024-M-00263. The circuit court then reinstated Morgan's PCR motion in March 2024.

[3] This subsection provides:

he was induced to plead guilty based on the State's offer to recommend an illusory or invalid sentence. Thus, Morgan effectively argues that his guilty plea was not entered into knowingly, intelligently, and voluntarily.

¶9.     The circuit court ultimately denied Morgan's PCR motion, concluding that there was "no evidence to be found to support Morgan's claim that he pled guilty because of the State's offer to recommend an illusory or illegal sentence." In fact, the circuit court reasoned that it could not find any "statements in the sentencing transcript wherein the State or defense counsel opined the State had ever or was [ever] going to recommend the Jefferson Davis County sentences run concurrent with Forrest County's sentence." The circuit court also held Morgan's sentence of forty years—with twenty-five years to serve and fifteen years of post-release supervision—was both legal and proportionate, as it was within the parameters set by Mississippi Code Annotated section 97-5-35 (Rev. 2014).[4] Lastly, the circuit court held

> When a person is sentenced to imprisonment for a felony committed while the person was on parole, probation, earned-release supervision, post-release supervision or suspended sentence, the imprisonment shall commence at the termination of the imprisonment for the preceding conviction. The term of imprisonment for a felony committed during parole, probation, earned-release supervision, post-release supervision or suspended sentence shall not run concurrently with any preceding term of imprisonment. If the person is not imprisoned in a penitentiary for the preceding conviction, he shall be placed immediately in the custody of the Department of Corrections to serve the term of imprisonment for the felony committed while on parole, probation, earned-release supervision, post-release supervision or suspended sentence.

Miss. Code Ann. § 99-19-21(2).

[4] "Any person who violates any provision of Section 97-5-33 shall be guilty of a felony and upon conviction shall be fined not less than Fifty Thousand Dollars ($50,000.00)

5

that Morgan had failed to meet the burden of proving he had ineffective counsel. Aggrieved, Morgan now appeals.

## STANDARD OF REVIEW

¶10.    "When reviewing a trial court's denial or dismissal of a PCR petition, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Haley v. State*, 450 So. 3d 1260, 1262 (¶7) (Miss. Ct. App. 2024). "Additionally, the burden of proving factual allegations in support of the PCR motion is upon the defendant." *Chambliss v. State*, 188 So. 3d 1262, 1265 (¶8) (Miss. Ct. App. 2016).

## ANALYSIS

¶11.    On appeal, Morgan alleges three errors in the circuit court's denial of his PCR motion, all of which echo claims previously made to the circuit court. First, Morgan asserts that his guilty plea was involuntary because he had been informed that the State would recommend his Jefferson Davis County sentences would run concurrently with each other and concurrently with his sentence in Forrest County. Second, Morgan claims he received ineffective assistance of counsel when his counsel advised him to "agree to an invalid guilty

---

nor more than Five Hundred Thousand Dollars ($500,000.00) and shall be imprisoned for not less than five (5) years nor more than forty (40) years. Any person convicted of a second or subsequent violation of Section 97-5-33 shall be fined not less than One Hundred Thousand Dollars ($100,000.00) nor more than One Million Dollars ($1,000,000.00) and shall be confined in the custody of the Department of Corrections for life or such lesser term as the court may determine, but not less than twenty (20) years." Miss. Code Ann. § 97-5-35.

plea without first advising [Morgan] that the plea could never be legally met" and when counsel "fail[ed] to object to the judge's failure to follow Mississippi Rule of Criminal Procedure 15.4." Lastly, Morgan claims the sentence he received was illegal and disproportionate to his crimes. We address each of these arguments in turn.

### I.     Morgan's plea was voluntary.

¶12.   Morgan argues that the circuit court erred in denying his PCR motion because he pleaded guilty based on a belief that the State would recommend his Jefferson Davis County sentences run concurrently with his Forrest County sentence, rather than running consecutively to it. As previously stated, Morgan claims that because his sentences in each county were statutorily prohibited from running concurrently under section 99-19-21(2), he was induced to plead guilty based on the State's offer to recommend an illusory or invalid sentence. Thus, Morgan effectively argues that his guilty plea was not entered into voluntarily, knowingly, and intelligently.

¶13.   "Under Mississippi law, a guilty plea is binding if entered voluntarily, knowingly, and intelligently." *Creel v. State*, 354 So. 3d 405, 411 (¶17) (Miss. Ct. App. 2023). Therefore, when this Court examines the voluntariness of a plea, we consider "if the defendant knows what the elements are of the charge against him, including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea." *Albert v. State*, 372 So. 3d 173, 177 (¶11) (Miss. Ct. App. 2023). Our Supreme Court has also held that when assessing the voluntariness of a guilty plea,

7

[t]he thoroughness with which [the defendant] was interrogated by the lower court at the time his plea was tendered is the most significant evidence of all. For, without regard to the advice or instruction [the defendant] may have been given by his attorney, the lower court's questioning and explanations to [him] of his rights and of the consequences of his plea were sufficient to render the plea voluntary.

*Chambliss*, 188 So. 3d at 1265 (¶11).

¶14. Stated differently, "the plea is rendered voluntary when the defendant hears from the trial court what the effects and consequences of his guilty plea will be, despite the advice given to the defendant by his attorney." *Albert*, 372 So. 3d at 177 (¶12). A PCR movant also bears the burden of proof when claiming that plea was not voluntarily entered. *See generally Chambliss*, 188 So. 3d at 1265 (¶10). Should a defendant plead guilty under oath in open court, that "[s]olemn declaration in open court carr[ies] a strong presumption of verity." *Young v. State*, 329 So. 3d 589, 591 (¶8) (Miss. Ct. App. 2021).

¶15. The record before us contains Morgan's sworn plea petition and the transcripts of both the March 2 and March 9 hearings, all of which indicate that Morgan entered his guilty plea to all three counts of child exploitation "voluntarily, knowingly, and intelligently," as nothing suggests an illusory or invalid offer from the State induced Morgan to plead guilty. *Creel*, 354 So. 3d at 411 (¶17).

¶16. For example, in the plea petition, Morgan acknowledged under oath that "[t]here is no agreement made by me and/or my attorney with the district attorney" and that while "the district attorney may make a [sentencing] recommendation to the court; HOWEVER, the court is NOT bound by the recommendation." In the plea petition, Morgan also

8

acknowledged that the Jefferson Davis County sentences "may be imposed consecutively to or in addition to any sentence he may receive if [his] prior case [was] revoked" and that "no officer or agent of any branch of government . . . has made any promise or suggestion of any kind to [him] . . . that [he] will receive a lighter sentence or any form of leniency if [he] plead[ed] guilty."

¶17. Furthermore, the transcript of the March 2 hearing shows that the circuit court reviewed the charges against Morgan as set forth in the indictment, verified that Morgan was satisfied with his attorneys, and explained the possible sentences Morgan could receive as a result of pleading guilty to all three counts of child exploitation.

¶18. The circuit court confirmed that Morgan was aware of the consequences of entering a guilty plea and again verified that Morgan had not been promised anything in return for pleading guilty.[5] The circuit court also explained the minimum and maximum sentences Morgan could receive as a result of pleading guilty to three counts of child exploitation. Additionally, the circuit court took steps to ensure that Morgan knew his sentences for each count could be "stacked," explaining to Morgan that if he were to be sentenced to forty years per count, Morgan was effectively "looking at a potential of 120 years." Morgan said he understood. Moreover, the circuit court explained that each count of child exploitation carried a potential fine and that these fines could be "stacked" as well.[6]

---

[5] When asked, "[h]as anybody promised you anything about your sentence, or how it would be served," Morgan replied "no."

[6] The circuit court explained to Morgan, "you got three counts at [a potential]

9

¶19. Following this exchange, the circuit court made sure Morgan understood the charges and possible consequences of pleading guilty. In particular, the circuit court ensured that Morgan knew he was entering a blind plea. When urged by the circuit court to explain his understanding of a blind plea, Morgan replied, "[B]asically, throwing yourself on the mercy of the court . . . and leaving it to [the court] to render righteous judgment." The circuit court judge also explained the sentencing procedure he would use, telling Morgan that he "always respectfully listen[s]" to defense counsel's recommendations and listens to the State's recommendations as well. Yet, the circuit judge cautioned that although he may listen to and sometimes follow those recommendations, he did not "bind" himself to them. After all of this, the judge asked Morgan how he pled to the three counts of child exploitation, and Morgan replied, "Guilty, your honor."

¶20. Additionally, nothing in the March 9 sentencing transcript suggests the State recommended that the Jefferson Davis County sentences should run concurrently with the Forrest County sentence. At the sentencing hearing, the State noted the circuit court had a great deal of discretion and that it was "leaving to the court's discretion" whether to run the charges consecutively to or concurrently with Morgan's fifteen-year sentence in Forrest County. Morgan's counsel also stated his belief that "the State was not going to make . . . [a] recommendation as to whether those sentences would be served concurrently or consecutively with" the Forrest County sentence. It is clear that neither the State nor

$50,000. That's three times five."

Morgan's counsel believed an arrangement had been made that would result in Morgan's Jefferson Davis County sentences running concurrently with his Forrest County sentence.

¶21.    We also find that the "thoroughness with which [Morgan] was interrogated by the lower court at the time his plea was tendered" was more than sufficient to render his plea voluntary. *Chambliss*, 188 So. 3d at 1265 (¶11). Under oath and in open court, Morgan stated that he was voluntarily entering a plea of guilty. Morgan swore in his plea petition and in open court that he knew and understood the consequences and sentences for his guilty plea. He swore that he knew and understood that the circuit court did not have to follow any recommendation from the State. He swore that he knew and understood that he had not been promised anything in exchange for his guilty plea and that he was entering a blind plea.

¶22.    "Solemn declaration in open court carry a strong presumption of verity," and Morgan's previous statements—verifying the voluntariness of plea—contradict his current claim that his plea was involuntary. *Young*, 329 So. 3d at 591 (¶8). Moreover, at no point in his PCR motion does Morgan claim he would not have pleaded guilty if he had known he was unable to serve the Forrest County and Jefferson Davis County charges concurrently.

¶23.    Further, PCR movants bear the burden of proof when claiming that their plea was not voluntarily entered, and here, Morgan failed to meet this burden. *See generally Chambliss*, 188 So. 3d at 1265 (¶10). As the circuit court correctly recognized, "the Mississippi Supreme Court has stated that when the only support offered by a convict is his own affidavit, and his affidavit is contradicted by his own sworn statement, an evidentiary hearing is not required."

11

*Young*, 329 So. 3d at 591 (¶8). Nothing in the record suggests that the State had a recommendation for Morgan's sentence. The only evidence Morgan offered to support his claim that his plea was induced by this arrangement was his own affidavit. This is not enough here.

¶24. In sum, we find no reversible error in the circuit court's denial of Morgan's PCR motion.

## II. Morgan's counsel was not deficient.

¶25. Morgan asserts that he received ineffective assistance from his defense counsel. In making this argument, Morgan claims that his attorneys compelled him to "agree to an invalid guilty plea without first advising [him] that the plea could never be legally met," and "fail[ed] to object to the judge's failure to follow Mississippi Rule of Criminal Procedure 15.4(a)(2)(c)."

¶26. "To successfully prove ineffective assistance of counsel, [the defendant] bears the burden of demonstrating that (1) his lawyer's performance was deficient, and (2) he suffered prejudice as a result of his lawyer's deficient performance." *Albert*, 372 So. 3d at 180 (¶16) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Absent both showings, a defendant may not prevail on his claim that his counsel was ineffective." *Chambliss*, 188 So. 3d at 1266-67 (¶19).

¶27. Furthermore, "[a] defendant must demonstrate that his counsel's conduct proximately resulted in the guilty plea, and that but for counsel's errors, he would not have entered the

12

plea." *Tate v. State*, 372 So. 3d 1054, 1057 (¶9) (Miss. Ct. App. 2023). "A defendant must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own." *Id.* It should also be noted that "a voluntary guilty plea [generally] waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Tate*, 372 So. 3d at 1057 (¶9). Finally, the burden of proving both prongs of the test articulated in *Strickland* is on the defendant, and the defendant must overcome the presumption that "defense counsel is . . . competent." *Chambliss*, 188 So. 3d at 1266-67 (¶19).

¶28.    Our record supports the circuit court's conclusion that "Morgan failed to satisfy the first prong under *Strickland*," as Morgan failed to prove that his counsel was deficient. Morgan's PCR motion contained no evidence, aside from his own affidavit, which supported his claim that his counsel's performance was deficient. The absence of other supporting affidavits is a problem for Morgan because "whe[n] a PCR movant alleges ineffective assistance of counsel but offers only his affidavit in support of his claim, "then his ineffective-assistance-of-counsel claim is without merit." *Thomas v. State*, 159 So. 3d 1212, 1215 (¶10) (Miss. Ct. App. 2015). Additionally, Morgan failed to demonstrate how his counsel's conduct "proximately resulted in the guilty plea," as Morgan never claims that he would not have pleaded guilty if he had known his Forrest County and Jefferson Davis County sentences could not run concurrently.

¶29.    Moreover, as discussed above, our review of the record has uncovered no evidence

13

that a plea deal was offered to Morgan. In fact, the record suggests the opposite: during the March 9 sentencing hearing, both the State and Morgan's counsel confirmed that the State was making no recommendation as to whether Morgan's Jefferson Davis County sentences should be served concurrently with the Forrest County sentence. The State specifically stated no plea deal was offered to Morgan and that the State was "leaving to the court's discretion" whether to sentence Morgan to concurrent or consecutive sentences.

¶30. Without evidence to show that any sort of "offer" was made to Morgan by the State, the legality of the alleged offer is irrelevant. Thus, Morgan's claim that his counsel was ineffective and wrongly persuaded him to "agree to an invalid guilty plea without first advising [him] that the plea could never be legally met" is without merit.

¶31. We also find that Morgan's ineffective assistance of counsel claim is contradicted by his own sworn statements in his plea petition and at the plea hearing. In his plea petition, Morgan confirmed that he was satisfied with the advice provided by his attorneys, that they had fully informed him on all matters, including the nature of his charges, and that he was entering a plea of guilty freely and voluntarily with a full understanding of all matters set forth in the indictment. During the plea hearing, the circuit court asked Morgan, "So, you are satisfied with what [your attorneys] have done for you," and Morgan responded affirmatively—a clear example of when a "defendant's assertions of ineffective assistance of counsel are substantially contradicted by the court record." *Tate*, 372 So. 3d at 1057 (¶9).

¶32. Given that no evidence of a plea agreement existed, much less any evidence that

Morgan relied on counsel's promise of an illusory offer, we cannot say the circuit court erred in holding that Morgan failed to sustain the burden of proving his counsel's performance was deficient as required under the first prong of *Strickland*.[7]

¶33.    As to Morgan's claim that his counsel was deficient for not requiring the court to follow Mississippi Rule of Criminal Procedure 15.4, we likewise find no deficiency, because there is no evidence that a plea agreement or deal existed. Rule 5.4 governs the responsibilities of the State, the defense, and the court when entering into plea agreements. Accordingly, when "the prosecuting attorney and the defendant's attorney . . . reach an agreement that upon entry of a plea of guilty . . . the prosecuting attorney may . . . make a recommendation to the trial court for a particular sentence." M.R.C.P. 15.4. However, "the court may accept or reject [the recommendation]." *Id.*

¶34.    In the instant case, since no agreement was ever reached between the State and Morgan, Rule 15.4 did not, and could not, apply. Additionally, the record reflects that Morgan was fully aware that he was entering a blind plea and that Morgan knew the circuit court was not bound to follow any sentencing recommendations made by either the State or defense. In short, because there was no plea agreement, Morgan's attorneys could not have

---

[7] The circuit court went on to briefly address the second prong of *Strickland* and concluded that Morgan had not suffered any prejudice as a result of his attorney's performance. In fact, the circuit court concluded that Morgan received "great value" for his plea, as Morgan could have received three consecutive life sentences, and the State revealed during sentencing that it had decided not to pursue three additional child exploitation charges that could have been brought against him.

15

objected to the circuit court's failure to enforce it.

¶35. Because there is no evidence of a plea agreement, there is no evidence that counsel advised him to accept "an invalid guilty plea," and there is no evidence that the court failed to abide by Rule 15.4. Thus, there is no evidence that counsel's performance was deficient or that Morgan was prejudiced by the performance. Therefore, we find no abuse of discretion on the part of the circuit court and affirm its finding that under either prong of *Strickland*, Morgan failed to prove his counsel was ineffective.

### III. The sentences are legal and proportionate.

¶36. Morgan's final argument on appeal is that he received illegal and disproportionate sentences. In particular, Morgan claims that the sentences he received for each of the three convictions of child exploitation were disproportionately severe, as there are instances where "much more lenient penalties [exist] for much worse crimes." In making this argument, he emphasizes that he "did not directly harm anyone, [t]hough he may have caused indirect psychological harm," and that "much more lenient penalties" have been issued to defendants accused of crimes "much worse" than those Morgan committed. Additionally, Morgan argues that his fines and penalties imposed by section 97-5-35 are unconstitutional.

¶37. "An illegal sentence is one that does not conform to the applicable penalty statute." *Phillips v. State*, 332 So. 3d 408, 411 (¶7) (Miss. Ct. App. 2022). At the time Morgan pled guilty to the Jefferson Davis County charges in 2018, he was sentenced in accordance with Mississippi Code Annotated section 97-5-35, which states:

16

Any person who violates any provision of Section 97-5-33[8] shall be guilty of a felony and upon conviction shall be fined not less than Fifty Thousand Dollars ($50,000.00) nor more than Five Hundred Thousand Dollars ($500,000.00) and shall be imprisoned for not less than five (5) years nor more than forty (40) years. Any person convicted of a second or subsequent violation of Section 97-5-33 shall be fined not less than One Hundred Thousand Dollars ($100,000.00) nor more than One Million Dollars ($1,000,000.00) and shall be confined in the custody of the Department of Corrections for life or such lesser term as the court may determine, but not less than twenty (20) years.

¶38. Moreover, "to determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Russell v. State*, 346 So. 3d 435, 439 (¶17) (Miss. 2022). As our Supreme Court explained in *Russell*, it is "only in the exceedingly rare case in which this threshold comparison leads to an inference of gross disproportionality should the court then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id.* (internal quotation marks omitted).

¶39. Our review of the record reflects that Morgan received a legal and proportionate sentence. The Jefferson Davis County Circuit Court sentenced Morgan to forty years in custody on each of the three counts of child exploitation and ordered him to pay a fine of $50,000 for each count. All three counts were ordered to run concurrently with each other, with twenty-five years to be served and fifteen years of post-release supervision. As this was Morgan's second violation of section 97-5-33, the terms of section 97-5-35 dictated the

---

[8] All of Morgan's convictions, whether in Forrest County or Jefferson Davis County, are pursuant to section 97-5-33.

statutory maximums and minimums Morgan could have received. The statutory maximum was life in prison and a fine of one million dollars per count, for a total of three consecutive life sentences and a fine of three million dollars.

¶40. Additionally, this Court agrees with the circuit court's conclusion that "[a] threshold comparison does not lead to an inference of gross disproportionality." As the circuit court pointed out in the order denying Morgan's PCR motion, his crimes were "egregious," and Morgan "ha[d] committed the same crime against children multiple times." The circuit court concluded that the nature and repetition of Morgan's crimes obviated the need to compare his sentence to other sentences in different jurisdictions for the same crimes. This Court agrees. When the "gravity of [Morgan's] offense" is compared to "the severity of the sentence," it cannot be said that Morgan's sentence is "grossly disproportionate." *Russell*, 346 So. 3d at 439 (¶17). Serving twenty-five years and paying a fine of $150,000 for child exploitation, followed by post-release supervision despite already having a prior conviction for child exploitation, does not seem "grossly disproportionate" to this Court.

## CONCLUSION

¶41. Morgan did not show that he was induced to plead guilty by an illusory or illegal plea agreement because there is no evidence of such an agreement. Thus, Morgan did not show that his plea was involuntary or that his counsel was ineffective for encouraging the supposed plea offer. Nor did Morgan show that his sentence was illegal or disproportionate to his crimes. We affirm the circuit court's denial of Morgan's PCR motion.

¶42. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**